HUGHES ET AL. *v.* AVERZA

[No. 230, September Term, 1959.]

*Decided June 14, 1960.*

*Motion to modify opinion filed June 22, 1960, granted July 1, 1960, and opinion modified.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James H. Norris, Jr.* and *John T. Enoch,* with whom were *Goodman, Meagher & Enoch* on the brief, for appellants.

*James C. Burch,* with whom was *Michael F. Delea* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Peter Averza (the testator) died leaving what purported to be a last will and testament, by which he devised certain real property to three of his grandchildren in trust until the youngest arrived at the age of twenty-one years, bequeathed one dollar to each of his two natural daughters by his first wife and his two adopted sons, and then devised and bequeathed the rest and residue of his estate to his second wife, Ida Averza (the caveatee), and appointed her as the executrix of the will. A prior will had been executed by the testator on April 18, 1957, but it was not admitted in evidence and no proffer was made with respect to its terms and provisions. Before the subsequently executed will dated March 29, 1958, could be probated three of the children, namely, Barbara Hughes, Mary Ellen Guidice and Dominic Averza (the caveators) filed notice of caveat. Joseph Averza, the other adopted son, did not join in the caveat proceedings. A formal caveat followed in due course. Issues concerning (1) execution of will; (2) knowledge of contents; (3) mental capacity; (4) undue influence; (5) fraud; and (6) forgery, were framed by the Orphans' Court and transmitted to the Superior Court of Baltimore City for trial by a jury. For want of sufficient evidence, the lower court ruled as a matter of law at the conclusion of the trial that the jury should render verdicts for

the caveatee against the caveators on the third, fourth and fifth issues (mental capacity, undue influence and fraud). The first, second and sixth issues (execution of will, knowledge of contents and forgery) were submitted to the jury and its answers on these issues were also favorable to the caveatee with the result that the will was sustained on all the issues. The caveators, claiming errors in rulings on the evidence and in the refusal of the court to postpone the case during the course of the trial, appealed. It is contended that the court erred (i) when it refused to admit the earlier will for the purpose of signature comparison; (ii) when it refused to admit the same will for the purpose of showing undue influence; (iii) when it refused to permit Eva Averza (wife of Joseph) to testify regarding the undue influence of the caveatee on the testator; and (iv) when it refused to postpone the trial to permit the engaging of a handwriting expert by the caveators. A fifth claim—to the effect that the scrivener's representation of the caveatee was prejudicial to the rights of the caveators—was abandoned at the oral argument in this Court.

## (i)

The refusal to admit the earlier will to provide another genuine signature of the testator for comparison with the alleged forged signature to the later will was not prejudicial error. The trial court had admitted into evidence exhibits showing genuine signatures of the testator, made during a ten-year period on a deed, mortgage, adoption papers, liquor licenses, bank signature cards and a number of cancelled checks, for comparison purposes. The claim is that the signature on the first will, executed eleven months before the contested will, would have been better evidence of the signature of the testator in his later years. The contention is without merit. One of the checks dated March 28, 1958—the day before the last will was executed—bore the endorsement of the testator. He had also signed or endorsed other checks between March 3, 1958, and June 23, 1958. Thus, the jury had an abundance of genuine signatures of the testator to compare with the alleged forged signature to the contested will. Under the circumstances it is not likely that the caveators were prejudiced by the refusal of the court to admit the earlier will for signa-

ture comparison purposes. Assuming that the refusal was error, it was harmless. It is the policy of this Court not to reverse a judgment for harmless error. *Adams v. Benson,* 208 Md. 261, 117 A. 2d 881 (1955). In any event, the caveators had the burden of showing prejudice as well as error and they failed to do either. *Balto. Transit Co. v. State for Use of Castranda,* 194 Md. 421, 71 A. 2d 442 (1950); *Hance v. S. R. C.,* 221 Md. 164, 156 A. 2d 644 (1959).

(ii)

Under the circumstances, it was also not error to exclude the earlier will for the purpose of showing undue influence. The undue influence that invalidates a last will and testament is that degree of importunity which—because the testator is too weak to resist it—deprives him of his free agency and subordinates his will to that of another. *Davis v. Calvert,* 5 G. & J. 269, 302 (1833); *Koppal v. Soules,* 189 Md. 346, 56 A. 2d 48 (1947); Sykes, *Contest of Wills in Maryland,* § 91 (1941). Moreover, the burden of proving undue influence is always on the caveator. *Kuenne v. Kuenne,* 219 Md. 101, 148 A. 2d 448 (1959). The contention here is that the earlier will was admissible to show that the contested will was not in accord with the previous intentions of the testator with respect to his children. It appears that the prior will might have been admissible for that purpose. See *Dudderar v. Dudderar,* 116 Md. 605, 82 Atl. 453 (1911) [unexecuted will written by testator was properly admitted in evidence to show that contested will was not in accord with previous intentions]. But there was no proffer of what the prior will contained, and we cannot tell from the record whether its exclusion was prejudicial or not. Even if we assume that its provisions were more favorable to the caveators than the will under attack, that would not be evidence *per se* of undue influence, but merely of a change of intention that would not be enough to warrant submission of the issue to the jury. *Malone v. Malone,* 148 Md. 200, 129 Atl. 10 (1925).

(iii)

Under the circumstances, the adverse rulings of the trial court, which precluded Eva Averza from testifying with re-

gard to the alleged undue influence that the caveatee had on the testator, were not improper. There is no doubt, of course, that such influence as existed was a proper subject of inquiry under the submitted issue. Presumably, Eva, who had talked to the caveatee over the telephone on an average of five days in a week for about a year, was prepared to testify as to the extent of the influence, but was not allowed to do so when objections interposed by the caveatee were sustained by the court. But, as stated, the rulings were not improper. The only two questions trial counsel for the caveators (who was not counsel on appeal) propounded to the witness to elicit what she knew concerning the subject were clearly open to objection. During the course of her testimony, the witness was asked whether the caveatee had ever had an occasion to discuss her husband with the witness. There was an objection. When trial counsel explained to the court that he was prepared to have the witness testify as to some remarks made by the caveatee with respect to the will, which was subsequently executed in her favor, and to other remarks the caveatee made concerning the natural children of the testator, that would show the extent of the domination the caveatee exercised over her husband, counsel was directed to lay a foundation before proceeding. But the very next question that he asked—to the effect that from what the witness "observed" could she say that the caveatee "dominated her husband"—was also objected to on the ground it called for the conclusion of the witness. The court agreed and no further effort was made by trial counsel to propound any other questions concerning undue influence; nor was a proffer made to advise the court what the witness would have said had she been allowed to testify. It is clear that the first question was too general and did not confine the witness within a stated limit. See *Weiss v. Northern Dredge & Dock Co.,* 155 Md. 351, 142 Atl. 253 (1928). As to the second question, the witness should not have been asked about her opinion or impression but only concerning facts and circumstances of which she was competent to speak. *Worthington v. Lipsitz,* 131 Md. 254, 101 Atl. 625 (1917) ; Gorter, *Law of Evidence,* p. 198 (2d ed. 1924). With respect to the ab-

sence of a proffer of proof on these points, it was suggested at the oral argument that the explanation made by trial counsel following the first objection served the purpose of a proffer. We do not agree. Ordinarily, an exception to the exclusion of evidence may only be presented and reserved for appellate review by first asking the witness a proper and pertinent question, and then, upon objection thereto, by stating to the court in a somewhat detailed summary what the testimony would have been had the witness been permitted to answer the question. 3 Am. Jur., *Appeal and Error,* § 354.

### (iv)

The court did not abuse its discretion when it refused to postpone the trial, which had been in progress before a jury for three days, to afford the caveators an opportunity to engage a handwriting expert. There was no element of surprise and if they needed an expert, they should have employed him before trial. In fact, according to the record, they had either engaged an expert or contemplated doing so. Interrogatories seeking the names of the caveators' witnesses were served by the caveatee on the caveators before trial, and the caveators had answered by supplying, among others, the name of a known handwriting expert. Nevertheless, the caveators, relying on the discretionary power of the court under Rule 527 to continue an action in order that a trial may be had upon the merits or as the interests of justice may require, contend that refusal to grant a postponement was an abuse of discretion. The contention is wholly without merit. Section c of the rule concerning absent witnesses was designed to facilitate the trial of cases, not to delay them. In a case such as this, where the caveators evidently did not know what conclusion a handwriting expert might reach if and when engaged, the rule was certainly never intended to operate in a manner which would permit a dilatory party to go on a fishing expedition if and when it suited his purpose to do so. On the contrary § c 1 clearly indicates that the rule is applicable only when the *evidence* of an absent witness— favorable to the movant—is wanting. However, even more to the point, the movants made no effort whatsoever to com-

ply with the mandatory requirements of § c 1 and 2 of the rule concerning the affidavit and its contents. Under such circumstances there is no doubt that the failure of trial counsel to adequately prepare for trial was not a ground for a continuance or postponement. Moreover, in the absence of a showing of abuse of discretion, a ruling on a motion for a continuance or postponement, is not reviewable. *Phoebus v. Sterling,* 174 Md. 394, 198 Atl. 717 (1938) ; *Dean v. Turner,* 31 Md. 52 (1869).

Since the record does not disclose reversible error as to any of the questions raised, the rulings of the trial court must be affirmed.

> *Rulings affirmed, the appellants to pay the costs.*